UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Patricia Ahner,                                  Case No. 3:17-cv-707

    Plaintiff

    v.                                           MEMORANDUM OPINION
                                                 AND ORDER

Jeffrey Allen Smith, et al.

    Defendants

## I. INTRODUCTION

Plaintiffs Patricia and Daniel Ahner brought this suit for personal injuries against Defendants Jeffrey Allen Smith and his employer, John David Mathena dba Mathena Trucking, as well as Randall Lee Hughes and his employer, Moon Star Express LLC. (Doc. No. 1). Plaintiffs' negligence claims stem from two vehicle collisions that took place on May 23, 2016. In the first, Plaintiffs' car collided with a tractor-trailer driven by Jeffrey Allen Smith as both were traveling westbound on State Route 2 in Erie County, Ohio. The second collision occurred shortly after, when Plaintiffs' vehicle collided with a tractor-trailer driven by Randall Lee Hughes in the eastbound lanes of State Route 2. Both employers admit the drivers were acting on behalf of the businesses at the time of the accidents. (Doc. No. 12; Doc. No. 28). During the litigation, Daniel Ahner passed away and Patricia Ahner, Executrix, was substituted as the named plaintiff for Mr. Ahner's estate. (Doc. No. 53).

Hughes and Moon Star Express filed a cross-claim against Smith and Mathena Trucking. (Doc. No. 12). Hughes also filed a counterclaim against Patricia Ahner, who was driving Plaintiffs' vehicle at the time of the accident. *Id.* Smith and Mathena filed a cross-claim against Hughes and Moon Star Express seeking indemnity or contribution. (Doc. No. 28).

Hughes filed for summary judgment as to Plaintiffs' claims against him and Defendants Smith and Mathena's cross-claims against him. (Doc. No. 64). Both Plaintiffs and Defendants Smith and Mathena filed a memorandum in opposition. (Doc. Nos. 72 & 73). Plaintiffs also filed for summary judgment on certain affirmative defenses raised by Smith and Mathena. (Doc. No. 74). Both sets of defendants filed a memorandum in opposition to Plaintiffs' motion for summary judgment. (Doc. Nos. 76&84). Plaintiffs filed a reply in support of their motion and objected under Rule 56(C) to Smith and Mathena's use of certain materials produced during settlement negotiations. (Doc. No. 78). Smith and Mathena filed a memorandum in opposition to the Rule 56(C) objection noting that two days prior to the plaintiffs' Rule 56(C) objection, Smith and Mathena requested supplemental discovery to cure any evidentiary problem created by their use of the settlement materials. (Doc. No. 79).

## II. STANDARD

Summary judgment is appropriate if the movant demonstrates that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading and instead must set forth specific facts showing there is a genuine issue for trial." *Id.* at 256.

### III. DISCUSSION

#### A. Hughes and Moon Star Express' Motion for Summary Judgment

Defendants Hughes and Moon Star Express seek summary judgment on Plaintiffs' negligence claims and the negligence cross-claims brought by Defendants Smith and Mathena. (Doc. No. 64). To prevail in a negligence case, a plaintiff must prove: (1) the existence of a legal duty; (2) defendant's breach of that duty; and (3) injury that is the proximate cause of the defendant's breach. *Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018, 1025 (Ohio 2002).

**1. Duty**

The duty element of negligence is a question of law. *Wallace*, 773 N.E. 2d at 1026. In Ohio, duty refers to "the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Id.* The existence of a duty depends on the foreseeability of harm. *Id.* "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction crossing its path." *Smith v. Bond*, 2016-Ohio-5883, 2016 WL 4983311, at *3 (Ohio Ct. App. Sept. 15, 2016) (quotation omitted). "'Right-of-way' means…the right of a vehicle…to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle… approaching from a different direction into its…path." O.R.C. § 4511.01(UU)(1).

"A driver need not look for pedestrians or vehicles violating his right-of-way." *Leahy ex rel. Rhinebolt v. Richardson*, 2011-Ohio-3214, 2011 WL 2565640, at *8 (Ohio Ct. App. June 27, 2002) (citing *Deming v. Osinski*, 263 N.E.2d 554 (Ohio 1970)). But that does not mean that a driver with

the right of way has no duty at all. Instead, when the driver has the right of way, the duty to exercise ordinary care arises only after the driver *actually* discovers some dangerous condition in his right of way. *See*, e.g., 2016-Ohio-5883, *Smith v. Bond*, 2016 WL 4983311 at *6 (reversing summary judgment because whether the driver saw the pedestrian was a material question of fact).

The first issue is whether Hughes was bound to any duty of care in this case. Hughes argues he owed no duty to the Ahners because it was unforeseeable that their car would come across the highway and into his right of way. (Doc. No. 64 at 10-11.) Neither Ahner nor Smith have addressed this argument.

Hughes had no freestanding duty to remain alert to the possibility of a vehicle coming across the median and into his right of way. At the same time, Hughes did have some duty—a duty that arose once Hughes discovered the dangerous condition that Ahner's vehicle represented.

Hughes was traveling in the right lane of the eastbound lanes at sixty-five miles per hour in a seventy mile an hour speed limit zone. (Doc. No. 64 at 5). Hughes was traveling in a lawful manner with the right of way and as such enjoyed a "preferential status" in relation to the oncoming Ahner vehicle. *See Koepke v. Metropolitan Property and Casualty Company Insurance Company*, 92 N.E.3d 76, 79 (Ohio Ct. App. 2017) (citing *Deming v. Osinski*, 263 N.E.2d 554 (Ohio 1970)).

Hughes testified to seeing Ahner's vehicle coming through the 75 median separating the westbound and eastbound lanes, (Doc. No. 67 at 22), but that was not when his duty came into existence. At that point, Ahner's vehicle was only a potential danger. He may have noticed it and reacted to it, but he had no legal duty to try to avoid Ahner's vehicle until it physically entered the eastbound lanes.

### 2. Breach

The next issue is whether Hughes breached his duty. Because this duty did not exist until Ahner's vehicle entered Hughes's right of way, evidence of breach must be based on Hughes's

4

actions, or inaction, in the time between Ahner's vehicle entered the eastbound lanes and the eventual collision. To prevail on his motion for summary judgment, Hughes must show that no reasonable jury could find he breached this duty.

Hughes testified that he began braking as soon as the first collision occurred and applied maximum pressure to his brakes once he realized Ahner's vehicle would be entering the eastbound lanes. (Doc. No. 64 at 11). Hughes's account is corroborated by an expert and two non-party eyewitnesses. (Doc. No. 82-1 at 36-38, 49). In the face of this evidence, Plaintiffs submit only Patricia Ahner's belief that Hughes could have avoided the collision by braking or swerving. (Doc. No. 66 at 49, 67). This is mere speculation, not fact. *See, e.g.*, *Leahy* 2011 WL 2565640, at *12 (upholding summary judgment in driver's favor and rejecting the argument that other evasive actions should have been performed as 20-20 hindsight).

Since there are no facts by which a reasonable jury could conclude Hughes acted unreasonably during the time his duty existed, Hughes cannot be found to have breached his duty.

**3. Causation**

Causation is generally established using the "but for" test. *Anderson v. St. Francis St. George Hosp., Inc.*, 671 N.E.2d 225, 227 (Ohio 1996). "[A] defendant's conduct is the cause of the event (or harm) if the event (or harm) would not have occurred but for that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct." *Id.* More specifically, it is the defendant's duty-breaching conduct that must be linked to the alleged loss. *Id.*

Therefore, the duty-breaching conduct that Plaintiffs must show caused their injury must be conduct that took place during the time Hughes had a duty. According to the accident reconstruction report offered by Hughes, less than a second passed between the time the Ahner's

5

vehicle entered the eastbound lanes and the time it collided with Hughes's vehicle.[1] (Doc. No. 82-1 at 62). Neither the Plaintiffs nor the other Defendants have offered any evidence to dispute this point. The report also provides detail about driver reaction times: the typical perception and reaction time for a simple event is 1.5 seconds; the typical perception and reaction time for a complex event can be anywhere from 3.5 to 4.5 seconds. (Doc. No. 82-1 at 61). The report characterizes the situation Hughes was faced with as a "complex event." *Id.* But even if this were a "simple event," viewing the evidence in the light most favorable to the non-moving parties, Hughes would not have been able to perceive and react in time to avoid the Ahners. Therefore, there are no facts by which a reasonable jury could conclude Hughes caused the collision.

   **4. Conclusion**

Hughes is entitled to summary judgment because no reasonable jury could find he breached the limited duty he owed under Ohio law or that the accident would not have occurred but for his alleged breach. Because Hughes was not negligent, his employer, Moon Star Express, is also entitled to summary judgment.

   **B. Plaintiffs' Motion for Summary Judgment**

Plaintiffs moved for summary judgment on the following four of the affirmative defenses raised by Smith and Mathena:

> 1. Further answering, defendants state that plaintiffs have failed to join all necessary and indispensable parties as set forth in the Federal Rules of Civil Procedure pursuant to Rules 19 and 19.1.

---

[1] Using the information supplied by Ms. Ahner in her deposition, the report states that it would have taken approximately .3 seconds for the Ahner's vehicle to go from entering the median to colliding with Hughes's vehicle. The report also offers a "more conservative reconstruction" in which it would have taken approximately .5 seconds. (Doc. No. 82-1 at 62).

2. Further answering, defendants state that the injuries and damages of which plaintiffs complain were caused by their own negligence, actual or imputed, which proximately contributed thereto.

3. Further answering, defendants state that the plaintiffs have failed to mitigate damages, if any.

4. Further answering, defendants state that they are entitled to all defenses and provisions covered under Senate Bill 80.

(Doc. No. 28 at 4-5).

**1. Joinder**

The Sixth Circuit has established a three-step process to determine whether joinder is proper under Rule 19:

> First, the court must determine whether the person or entity is a necessary party under Rule 19(a). A person is a necessary party under Rule 19 if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

*Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). Smith and Mathena contend insurers who made payments to Daniel Ahner or Patricia Ahner are necessary parties.[2] (Doc. No. 72 at 1-2). Plaintiffs argue these insurers are not necessary because there is no danger of these insurers pursuing claims against these Defendants, meaning there is no danger of these Defendants incurring multiple obligations.

---

[2] To prove such insurers exist, Smith and Mathena relied on documents Plaintiffs had given them during settlement discussions. Plaintiffs objected to this. I do not rule on the objection here. Smith and Mathena have since relied on other evidence to show there are some insurers who made payments to Patricia Ahner. As for the alleged payments to Daniel Ahner, plaintiffs evidentiary objection is moot because this court cannot compel the Center for Medicare and Medicaid Services to join this suit.

7

Ohio law recognizes three distinct kinds of subrogation: legal, statutory, and conventional. *N. Buckeye Educ. Council Grp. Health Benefits Plan v. Lawson*, 814 N.E.2d 1210, 1215 (Ohio 2004) (citing *State v. Jones*, 399 N.E. 2d 1215, 1216-17 (Ohio 1980)).[3] The scope of a subrogee's rights depend in many ways on which form of subrogation exists. *Id.* at 1217. Without more information about whether there was a contract between the insurers and the insured here, I cannot decide if the insurers are necessary parties.

I do note that even if the Plaintiffs are correct there is no risk to *Defendants* of multiple obligations, that would only address one of Rule 19(a)'s concerns. Without more information about the rights of Plaintiffs' insurers, it is impossible to determine whether disposing of this action without the insurers' involvement would impair the *insurers'* ability to protect their interest. Because Plaintiffs' have not shown there is no way the insurers are necessary parties, I cannot grant Plaintiffs' motion for summary judgment.

Aside from any private insurance companies, Smith and Mathena contend the Center for Medicare and Medicaid Services (CMS) is a necessary party because under federal regulations, "if Medicare is not reimbursed . . . the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." (Doc. No. 76 at 2). But even if these Defendants did owe this reimbursement, courts in this circuit have refrained from compelling CMS to join litigation under similar circumstances. *See e.g.*, *Gobrecht v. McGee*, 249 F.R.D. 262 (N.D. Ohio 2007); *see also Estate of Barbeaux v. Lewis*, 196 F.Supp.2d 519, 521 (W.D. Mich. 2002) (holding that sovereign immunity also prevented the court from joining CMS).

---

[3] Although part of its substantive holding appears to be superseded by R.C. § 2323.44, which prevents parties from contracting around the "make-whole" doctrine, *N. Buckeye Educ. Council Grp. Health Benefits Plan* remains a useful illustration of the way a subrogee's rights may depend on which form of subrogation exists.

8

In *Gobrecht*, even though it was undisputed that Medicare had made payments, the court explained "the obligation for reimbursement does not arise unless and until there has been a recovery by a beneficiary, one receiving the benefits of Medicare. There then follows an administrative procedure which is required in order to resolve Medicare's claims." *Gobrecht*, 249 F.R.D. at 262. Because Daniel Ahner has not yet made any recovery, he, just like the plaintiff in *Gorbecht*, is not in any position to begin the administrative process. Therefore, 42 U.S.C. § 405(h)'s exhaustion requirement bars jurisdiction over claims against CMS at this time.

Thus, I reject Defendants' argument that CMS should be joined in this action. But since there is evidence that Plaintiffs' were insured by a private insurer and Plaintiff failed to provide evidence of any subrogation rights of these insurance companies, a genuine issue of material fact remains as to whether another party should be joined. As such, I deny Plaintiffs' motion for summary judgment on Smith and Mathena's second affirmative defense.

2. **Plaintiffs' Negligence**

To prevail on their motion for summary judgment, Plaintiffs must show no reasonable jury could find Patricia Ahner negligently contributed to Plaintiffs' injuries. Plaintiffs argue Patricia Ahner cannot be found negligent because she was traveling lawfully with the right of way. This is correct, to a point. But Patricia Ahner is only shielded from negligence during the time she had no common-law duty to exercise ordinary care. Because that shield is limited to the events leading up to the first accident, I cannot grant plaintiffs' motion for summary.

I start with the events leading up to the first accident. "The law gives to the operator of a vehicle on the highway who has the right of way a shield, an absolute right to proceed uninterruptedly, but he forfeits that shield if he fails to proceed in a lawful manner." *Carrozza v. Landis*, 2012-Ohio-6194, 2012 WL 6738497, at *3 (Ohio Ct. App. Dec. 12, 2012) (quoting *Vavrina v. Greczanik*, 318 N.E.2d 408, 413 (Ohio Ct. App. 1974)).

9

Because there is no evidence to suggest that Patricia Ahner's vehicle was not proceeding in a lawful manner, there is no basis for evaluating her conduct under the common-law duty to exercise ordinary care.[4] Thus, even if Defendants are correct that Patricia Ahner increased the risk of an accident by driving in Jeffrey Smith's blind spot, she was entitled to continue along her right of way without any obligation to speed up or slow down to ensure Mr. Smith was aware of her presence on the road.

But defendants also allege that Patricia Ahner negligently operated her vehicle after the first collision occurred. Here, there are enough factual disputes to prevent summary judgment on this issue. For example, whether Ms. Ahner should have perceived and reacted to the risk of a second collision sooner is a question of fact, as is whether it was reasonable for her to try to accelerate across the eastbound lanes rather than brake before entering them.

Plaintiffs argue Ms. Ahner could not be negligent because she was confronted with a sudden emergency. (Doc. No. 74 at 8). Defendants contend that Patricia Ahner was not faced with a sudden emergency because the situation arose from her own conduct and circumstances under her control. (Doc. No. 82-1 at 6-7).

I do not decide whether this qualifies as a sudden emergency because even if it did, plaintiffs would not be entitled to summary judgment on that ground. Plaintiffs, relying on *Szilagyi v. Wynn*, argue "the doctrine of sudden emergency does not require the…most judicious choice…[but instead requires only] that it be reasonable for a person in that position." 2012-Ohio-6132, 2012 WL 6727371 at *5 (Ohio Ct. App. Dec. 24, 2012). Critically, while the presence of a sudden emergency may lower the standard of care required, it does not eliminate the duty completely. Therefore, even if Patricia Ahner was confronted by a sudden emergency after the first collision, whether Ahner

---

[4] The analysis here can also be understood as an application of the duty rule discussed in section III.A.1.

10

acted reasonably under the circumstances of that emergency is a question for the jury to decide. I deny Plaintiffs' motion for summary judgment as to this defense.

### 3. Mitigation

"[A]n injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided." *Lake v. Love*, 90 N.E.3d 36 (Ohio Ct. App. 2017) (quoting *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 719 N.E.2d 955 (Ohio 1999)). Because failure to mitigate is an affirmative defense, the party raising it has the burden of proving it. *Id.* Defendants have not responded to plaintiffs' arguments for summary judgment on this issue. Nor have defendants pointed to any acts of mitigation that Plaintiffs could or should have taken. Because defendants have failed to come forward with evidence to meet their burden, I grant Plaintiffs' motion for summary judgment on this defense.

### 4. Apportionment

Here, Smith and Mathena claim "defendants . . . are entitled to all defenses and provisions covered under Senate Bill 80." (Doc. No. 28 at 5). Senate Bill 80 implemented many changes to Ohio tort law, including caps on certain types of damages. *See Arbino v. Johnson & Johnson*, 880 N.E.2d 420 (Ohio 2007). In Plaintiffs' motion for summary judgment on this defense, Plaintiffs characterize this as an apportionment defense. (Doc. No. 74 at 10). Apportionment of fault among defendants and nonparties is one of the defenses provided for in Senate Bill 80. Defendants Smith and Mathena have not responded to Plaintiffs' characterization.

Ohio law sets forth procedures for determining the percentage of tortious conduct attributable to each party. *See* Ohio Rev. Code. § 2307.23. In granting summary judgment to Hughes and Moon Star, I found that Hughes was not responsible for any tortious conduct in this case. Thus, even though the collision with Hughes may be a cause-in-fact of some of Plaintiffs'

injuries, Defendants Smith and Mathena cannot apportion fault for these injuries to Hughes or Moon Star under § 2703.23.

## IV. CONCLUSION

For the foregoing reasons, I grant Defendants Hughes and Moon Star Express's motion for summary judgment. (Doc. No. 64). Plaintiffs' motion for summary judgment on Defendants Smith and Mathena's affirmative defenses is granted in part, and denied in part. Specifically, the motion is granted as to the mitigation defense, as well as the defense seeking to apportion some of the Plaintiffs' damages to Hughes and Moon Star.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge